Mr. Wessler? Yes, Your Honor. Good to have you with us, sir. Thank you, Your Honor. May it please the Court, Matthew Wessler, for the appellants. ERISA's duty of loyalty is absolute. As this Court has repeatedly recognized, when a fiduciary is charged with a fiduciary is helping to make investment decisions for planned participants, there can be no balancing of interests. Just the opposite. ERISA's duty of loyalty commands undivided loyalty to the planned participants, and that requires uncompromising rigidity. Any decisions that a fiduciary makes must be made with, as this Court and others have explained, an eye single to the interests of participants, not to any self-serving interests the fiduciary may also have. This Court has also said that if faithfully discharging this duty appears arduous, that is because it is. The District Court in this case failed to apply this uncompromising standard. It made specific findings that the record here to quote the District Court clearly established that one of Aon's fiduciaries was focused not on the planned participant's interests, but instead on his own. Specifically, the possibility that Aon could sell additional services and obtain increased fees, which could, and again I'm quoting the District Court here, burnish his candidacy to become a partner at Aon. Time and again, as the District Court found, this fiduciary put his own interests ahead of the plans by pushing the sales of delegated fiduciary services while simultaneously acting as a fiduciary and advising the plan on its investment decisions. Yet the Court below, even though it may – Can you keep saying it? And so I want to sort of just – all of the language in these cases about fiduciaries refer to investment decisions, right? You started off by saying investment decisions, these investment decisions. I have a hard time understanding why cross-selling or any kind of selling, right, if I want to get them to re-up my contract for traditional investment advice each year, I'm selling something to them. I'm selling my own services. And I just haven't found any cases that suggest persuasively to me that that decision, right, to sell you something is an investment decision. Can you help me? I understand the District Court didn't cite cases or anything but just sort of said, yes, but cross-selling here has some investment decision aspect. I'm not sure exactly how that worked. But can you help me understand why cross-selling or selling one's own services, you know, for the next year's round of advice, why that is a fiduciary investment decision? And if I could piggyback on Judge Richardson's question, it seems to me that the statute 29 U.S.C. 1002 21A talks about this investment advice. You're a functional fiduciary if you render investment advice with respect to any money or other property. And then the CFR 29 Section 25 10.3-21 says investment advice involves rendering advice as to the value of securities or other property or making a recommendation as to the advisability of investing in, purchasing in, or selling securities or other property. And how is that done at this point with the cross-selling? It just seems to me you're not meeting the definition of a fiduciary contained in the statute and in the CFR because there wasn't a advice regarding investing in, purchasing or selling securities or other property. Sure. So let me maybe take Judge Richardson's question first and then I'll let Judge Keenan try to answer it. They're the same question. You didn't pick that up. They're actually the same question. I would say they're slightly different because I think embedded, Judge Richardson, in your question was whether as a categorical rule cross-selling constitutes fiduciary advice or can satisfy the standard under ERISA. And I would say the answer to that is no, not necessarily. What do you say cross-selling is? Cross-selling is when one individual or an entity tries to push a product in a different context. But in this case, and the question of whether it was a fiduciary act at a general level is very fact-specific. So the statute lays out the standard, but whether the facts in a specific case qualify somebody as a fiduciary, it depends on this kind of question of the totality of the circumstances. And what Judge Bell found in this case, as a matter of fact, not so much the legal question but as a factual matter, that the scope of AON's fiduciary role was broader than just advising on individual plan investments. Its contract, and this is paragraph 19 of the district court's opinion, its contract here was broad in scope. It allowed AON to advise on a whole range of different investment strategies. And that's the key difference, is that what AON was doing here was not just assisting Lowe's in picking individual fund options. It was advising the company on its strategic decision-making when it came to the kind of plan set of menus that it wanted to offer and how it wanted to offer those menus. And the specific fact that I think justified what the district court found here, that AON and in particular Panus, who is one of the fiduciaries that was advising Lowe's, rendered this cross-selling service a fiduciary act was that in the exact same communication that the fiduciary is telling Lowe's, we think you should move your plan from one menu to another menu or change the structure of the plan. The fiduciary also said our delegated services product would dovetail nicely with this change in your plan menu. And so it's the scope collectively, the scope of that advice, which is coming at the same time in the same communication that rendered the advice on cross-selling a fiduciary act. Now, that is not always the case. It may be, Judge Richardson, as you've suggested, that in a different context, a fiduciary may not act as a fiduciary when cross-selling a different product. And I think this points up. So I'm just having a hard time understanding. It's in the same communication. So if I'm having a meeting with my client and I say, buy these stocks, oh, and I need you to sign the contract for my services next year, right? And, you know, this stock is going to dovetail nicely with, you know, the work I'm going to do for you next year, that I have a fiduciary duty with respect to getting him to sign the contract for me to provide services next year? I need to – again, I want to draw this distinction, I think, as clearly as I can. We're not talking about the same services that the fiduciary is already providing to the client. Okay, so stop. So the fact that they're in the same meeting, I'm good. That's fine. All right. So then – so the idea that they were in the same communication goes away. I think you're right about that. But so why is it that if I'm selling my own services, right, which are not yet purchased for 2023, that that's not a fiduciary duty, but if I'm selling an additional service for 2023, that is a fiduciary duty? That doesn't make any sense to me. It depends on the nature and scope of the fiduciary relationship. And here, the fiduciary relationship is not limited to just me advising you pick this fund or pick that fund. The fiduciary relationship in this case, as the district court found, was broader in scope and included general strategic advice over the nature of the plan. Is your argument – and the distinction you're trying to make, because I want to come back to Judge Keenan's point. Is your argument that the fiduciary duty here was broader than the statute and the CFR? No, no. Right? The statute and CFR define the scope of the fiduciary duty, not the contract. You keep saying the contract is very broad, but we look at, as Judge Keenan pointed out, the statute and the – to the extent it helps the CFR in defining what it is. And that requires the recommendations of securities, not the recommendation that you re-up my services for next year or that you buy pencil erasers from me too. Sure, but it does cover the strategic advice over the nature of the plan more generally than just pick this fund or pick that fund. And what the district court found here was that AON was providing that kind of strategic advice. Move your plan from, you know, one structure into another structure. And in the course of that advice, what AON was also doing was saying, and by the way, in order to help you manage this new structure, purchase our separate product that we've developed, this delegated fiduciary services. And that – what the district court found as a matter of fact, again, this is a mixed question, and I think to reach an alternative conclusion you would have to reject the fact findings that Judge Bell made here, was that that fell within the scope of this strategic advising that AON was doing throughout this entire relationship. But my point is – and I'll stop and let you go to something else – is it can be within the scope of their strategic advice by contract. Right? But if it doesn't fall within the statute, right, if cross-selling doesn't fall within the statute, it doesn't matter whether it's part of the contract or not. I don't understand why it's part of the contract, but even assuming it is, if it's not part of – if it doesn't fall under the statute, like cross-selling a separate service, if it doesn't fall under the statute, it doesn't matter what the contract says. Sure, but what I'm focused on is not cross-selling just divorced from anything else. It's whether cross-selling in this particular context fell within the strategic advice, which does fall under the statute as fiduciary conduct, whether this kind of cross-selling qualified as strategic advice under the statute and rendered AON a fiduciary for its statements that, for instance, purchasing this delegated fiduciary service would dovetail nicely with Lowe's move into a different plan. If AON had a contract and part two of the contract said, in addition to investment advice, we will advise you on the purchase of copy machines, right? And so we'll give you strategic advice about copying machines, right? And so part of your strategic plan is to buy lots of copy machines. Like that doesn't have anything to do with a fiduciary duty, right? So if it's something that's not the making a recommendation about the nature and type of securities or the value of those securities, it's not investment advice. There's not a fiduciary duty. Understood, and I don't dispute that at all. The line, again, that I'm trying to draw here is that cross in this particular context, cross-selling was not we'll advise you on paper clips or telephone, you know, plans or anything else. But track the language of the statute in the CFR and tell us why it was not. Well, I think it's providing the advice on investment strategy. That's what – and I don't think there's any dispute, Judge Keenan, that AON was acting as a fiduciary and providing strategic advice. That happens all the time. Well, they were saying simplify your offerings, right? They were saying simplify your offerings, yeah. Now, how does that meet the statute in the CFR? I'm sorry, Judge Keenan. Can you repeat the question? How does the advice to simplify your investment offerings to plan participants meet the definition in the statute and the CFR of rendering investment advice regarding the purchase of securities or other property? Yes, but I think the rendering advice is the key. What they're rendering advice on are the securities options, the offerings that the plan will provide to its participants and beneficiaries. If I could shift, because I do think that this points up what is the fundamental problem with the way that the district court understood the duty of loyalty. Because what you've got going on here, and I think this, Judge Richardson, in some ways gets maybe to what you were asking in a different way, is that under normal circumstances, in a case where you've got a fiduciary who is trying to wear two hats, maybe they are providing advice on plan management or the assets of a particular plan. Are they a fiduciary on both hats? Yes. On both sides? Yes. But if a fiduciary wears two hats, and this is really the key, ERISA doesn't impose a categorical prohibition on a fiduciary wearing two hats, but what it does do is it says if you are wearing two hats, you must figure out a way to clearly protect against the conflict of interest that will inevitably arise. And so, for instance, this Court's decision in defaulting. A fiduciary can only wear one hat, then. Sorry? A fiduciary really can only wear one hat. Yes. When it's acting as a fiduciary, the fiduciary can only wear one hat. And to make that clear, the fiduciary has to do something. Some courts have talked about it as stepping away temporarily as a fiduciary if you are also participating in a relationship as a business executive. Another court has talked about erecting some firewall between the fiduciaries that are acting as fiduciaries and the company's salespeople. But in this case – And you haven't talked at all about the duty of prudence, about the selection of the growth fund, about the failure to monitor the growth fund over a two-and-a-half-year period. It seems to me these are pretty substantial parts of your appeal you may want to take up now. Sure. I'm happy to focus on that. So in addition to the breach of a duty of loyalty, AON also breached its duty of prudence. And the key piece, I think, here is to recognize that while AON was acting as a fiduciary, it never performed the kind of meaningful investigation or analysis that's required for any prudent fiduciary who is choosing to select a new fund and in this case place over a billion dollars of the planned participant's money into that fund. The district court recognized that fact. It acknowledged that when AON was acting as a fiduciary, it never performed the necessary investigation. And can I ask that question? So Judge Keenan mentioned the time gap, but you seem to really want to focus on the fact that it wasn't done while they were fiduciary. Had they done like a complete and total review in two weeks before they became the fiduciary? Do you think they had to redo it the moment they became a fiduciary? I do, Your Honor. I think that what matters is that you've done it as a fiduciary because when you become a fiduciary is when the prudent standard actually kicks in. So it's not the gap that causes you concern. The concern that you have is that when they did the review before, they didn't have a fiduciary obligation or at least the same type of fiduciary obligation. And that really matters because if you're not a fiduciary, you could be making a decision based on any reason whatsoever. When the district court found they were a fiduciary, on what date? Well, at least two years after they had selected this fund. Sorry? What date? When did they fiduciary? I think it was October 2013, although I can get the specific date. October of 2013. Yeah, and this fund was created more than two years before then, and it was created for business purposes. It wasn't created in a way designed to vindicate. That was a finding made by Judge Bell in his opinion. Yes, correct. After the bench trial. Correct, yes. And is that reviewed here for what? Plain error? Yeah, I think it would be plain error. I don't think. Clear error? Yeah. Clearly erroneous? Yeah, and I don't think that. If it's contested on appeal. Correct, and I don't think it is, Your Honor. So I don't think that's a disputed. There's no cross appeal about it, we know that. No, no. And so in the absence of any meaningful, and I see I'm out of time if I could just briefly finish up. Go ahead. In the absence of any meaningful investigation or analysis or an assessment of the prudence of this option, while Aon was acting as a fiduciary, there's no way that it could have met its obligations under the duty of prudence. And I'm happy to answer any other questions on rebuttal. Thank you. Thank you very much, sir. Mr. Boyle. Thank you, Your Honor. May it please the Court. In a 120-page opinion, which is kind of a beast, Judge Bell made dozens of contextual credibility determinations, sifted through a mountain of evidence, and concluded that Aon had met its duties of loyalty and prudence. And there's nothing in that order I submit, no error in that order that merits reversal. Let me start with the loyalty claim. I think that Your Honors appreciate this. There were two theories of disloyalty below, and it got a little bit muddled in the discussion there, and I want to be really clear about this. One theory of disloyalty, one capacity in which the plaintiff said Aon was behaving disloyally was in providing investment structure advice, advice to the plan about potentially modifying the menu of investment options. And then there was a second respect in which they alleged that Aon behaved as a fiduciary and behaved disloyally, and that was in trying to sell the additional service offering for delegated services. Only one of those was Aon actually wearing a fiduciary hat, and that namely was in providing the investment structure advice. And I think plaintiff's principal contention on that issue, the alleged mistake that Judge Bell made according to them, is that he, in concluding that Aon had provided advice for loyal reasons, purely loyal reasons, thinking solely about the interests of the plaintiff participants, that the judge managed to ignore improperly a finding that he made that one of the consultants on the account, it was Mr. Penuse who's been mentioned, saw the advice as an opportunity to further Aon's delegated sale offering. And there is plenty of material in the order about Mr. Penuse's interest in supporting the sale bid, supporting the sale opportunity, plenty. But there is no finding. You'll search in vain, Judge Bell's opinion, for a finding that Mr. Penuse actually changed Aon's advice on menu restructuring or colored the advice on menu restructuring because he was interested in planting the seeds for the sale. There's no such finding at all. And indeed, if you look at paragraph 288 of the judge's order, I think it's clear that Judge Bell felt like he didn't need to answer that question. You know, what would Mr. Penuse have done if he were the only consultant on deck, if there weren't a fuller record that began before Mr. Penuse was even on the account, and he said there's no need to because I know one thing here, and that is that the advice that plaintiffs challenged, the menu restructuring advice, was formulated and delivered before Mr. Penuse was on the account. Can you help me understand from just a factual matter from the record? The plaintiff seems to want to connect these two, and there's some record evidence to suggest that the change in the investment structure somehow impacted the sale. So in other words, the delegated fiduciary became easier or better or something because of the investment structure change, that there's an impact between those two. What did the record tell us about that? I think the theory is that plaintiffs have below was that particularly as to the selection of the emerging investment structure, which Lowe's ultimately picked, that that was more likely to lead a plan to want to opt for delegated services because it was more complicated. Why? A, maybe do you agree with that, and is there a record to support that? I mean, that's the trouble I'm having is like because, I don't know, I might think it goes the other way, right? It's a simpler story, and so maybe it requires less. Judge Bell didn't dwell on that because he noted that consistently throughout this process, Aon's restructuring advice was in support of the alternative menu structure, which everybody conceded was far less likely to want to incline a plan toward delegated services. It was more simple. And this gets back to my point about Mr. Penouse. He was not even on the account when another consultant, Mr. Absher, for purely loyal reasons, according to Judge Bell, formulated the advice to the Lowe's plan advocating for this menu simplification using the alternative menu. And after Mr. Penouse came on the account, the advice didn't change at all. It didn't change a whit. It didn't change, but they do say, and I think the phrase they use, or at least your internal document suggests that that menu shift was a starting point for, or some such phrase, a starting point for the delegated services discussion. Help me understand what that means. There are some internal documents that I think came later, after June 2013. Yeah, but I'm just trying to understand what that means. The internal documents, I believe, in the record suggested that one way that a client might be inclined to be favorably impressed by additional services is if they restructure their menu. But why? Why? Why would that be? I'm literally just trying to understand it. I know you're dancing around it too. And maybe it's just not in the record, and that's fine. But why is the change make it more likely that a plan would adopt delegated fiduciary services? Again, I'm putting myself in plaintiff's shoes. I suppose the theory is that with any kind of change at all, the change in menu structure commands an interest potentially in more consulting services, if nothing else. That it's just a dynamic situation. But here the judge didn't need to go there. I think that's my reading of Paragraph 288, because the advice was formulated and delivered loyally by Mr. Absher in June 2013, and it never changed after that when Mr. Penouse came on the account. Indeed, the only respects, minor respects really, that the menu restructuring advice evolved thereafter were in respects that were plainly contrary to Aon's business interests. An example being not only the alternative structure that was clearly the express recommendation of the advice consistently throughout, which was less likely, everybody agreed, less likely to lead a plan to want to delegate because there's less work involved in maintaining an alternative structure, but also the minor respects in which it evolved were after Lowe's picked the emerging structure later, Aon made additional suggestions that were contrary to its business interests here about the structure. For instance, they recommended that the plan look at a brokerage window, which would have taken assets out of the delegation entirely. So it was contrary to Aon's business interests. Let me talk about the second issue, which, Judge Richardson, you were focusing on. You know, was Aon wearing a fiduciary hat when it presented the delegated sales proposal, or as Judge Bell put it, when it sought permission to make a delegated sales proposal? The trial court ultimately, and used the word easily, easily rejected that theory of breach, but I think there was a simpler basis for ruling that I think Your Honor was focused on, that Aon simply wasn't wearing a fiduciary hat when seeking to sell additional services to this plan. The trial court accepted plaintiffs' contrary view. But the trial court ruled they were fiduciary. The trial court, yes, that there's some fiduciary element to cross-filling. That is correct, Your Honor, but I think, as I'll develop in a moment, the trial court was applying an incorrect legal standard. Why didn't you cross-appeal? Because the court can affirm the judgment, the absence of a fiduciary breach here on that alternative ground, and that's why we didn't cross-appeal. The theory was that in seeking to present a delegated sales proposal, there was something of an implicit recommendation there that the services would be good for the plan. I think that was the theory. But as Judge Keenan pointed out, the regulation says that investment advice, making investment advice, makes one a fiduciary under ERISA only if that advice goes as to the value of securities or other property or as to the advisability of investing in securities or other property. And then, and this is important, then only if there's a mutual agreement that that advice is going to be the primary basis or a primary basis for the plan's decision. And here, the services that were offered and thus the implicit recommendation, if you accept that phrasing, were not about securities or other property. They were about a surrendering fiduciary responsibility for the plan to a delegate. And so even if AON had come in guns blazing and said, look, you need to delegate, you absolutely need to delegate, we'll put our reputation behind it, and you absolutely need to delegate to AON, we're the only people who can do this, even if the record were as such, that would not have made AON a fiduciary under the investment advice regulation. Now, let me talk about mutual agreement because I think the plaintiff's theory fails under that test in the regulation as well. The Judge Bell seemed to accept that the investment consulting agreement itself was a sufficient basis for concluding that the parties did have a mutual agreement, that AON's implicit recommendations would be a primary basis for the plan's decision making. But I would respectfully submit that the Judge's findings of fact here are fundamentally incompatible with that kind of agreement as to the delegated sales proposal. In paragraphs 130 and 131 of the order, Judge Bell specifically found that AON never made a recommendation concerning whether to delegate, much less to whom to delegate, that the Lowe's Committee never once asked AON for advice about whether to delegate or to whom to delegate, and indeed, that because the Lowe's Committee recognized that AON had a conflict on those issues, a financial conflict, it would have a financial interest in selling those new delegated services, the Committee understood that it needed to make that decision itself. I think the quote from paragraph 131 of the order is Lowe's Committee did not look to AON for those things. And so there is no theory that plaintiff offered at trial was unsustainable based on the trial court's factual findings here. There was no mutual agreement that with respect to delegating and delegating to AON, AON's views on that subject would have been a primary basis for the plan's decision. Indeed, it's hard to imagine, I suppose, at some level, how a recommendation that even plaintiff agrees was implicit, you know, implicit in asking to make a sales proposal, there was an implicit recommendation that these services would be good for the plan. How can an implicit recommendation be the subject of a mutual agreement that it would be the primary basis for the plan's decision? It's really hard to imagine. I do want to hear about you on the prudence. Here's where Judge Bell's findings are especially detailed. What? And I think plaintiff struggles to find a real legal issue in the prudence context. Prudence. What about the duty to monitor? Yes, there's the duty to monitor the investments. My principal point here, and I'll just cut to the chase, is that the prudence inquiry is context sensitive. This Court recognized in Tatum that there's no uniform checklist for prudence, that a variety of actions can suffice depending upon the particular circumstances. And here Judge Bell concluded that in context the prudence duty was easily satisfied. We have said that the fiduciary must monitor at regular intervals. Yes, Your Honor. And where is the evidence that the fiduciary did that in the context of this growth fund? Yes, it was continuous, Your Honor, and the context here is that the Aon Collective Trust and its growth fund strategy was simply an institutional, a cost-effective institutional vehicle for then hiring third-party asset managers to run the plan's assets. But it wasn't doing well over that period. Isn't that uncontested? Well, I think that is contested. I think Judge Bell found that from a risk-adjusted standpoint, the fund was toward the top of the pack over the time it was in the plan. It had a five-star, morning-star rating. But what is the evidence in the record that Aon systematically considered the wisdom of continuing with the growth fund at systematic intervals or regular intervals? So the context is that the Collective Trust is just a vehicle, a cost-effective vehicle for hiring third-party managers. And the analysis that Aon conducted occurred in the course of hiring those third-party managers to manage the assets in the Collective Trust and in firing them, replacing them. And Judge Bell goes into great detail on what Aon did during the period the growth fund was in the plan, replacing managers, reallocating assets among them, hiring new managers, taking away asset classes, putting in new asset classes. That process was continuous. And so contextually, and context is important. But where is the evidence that Aon reviewed whether the growth fund was a good investment for the Lowe's plan  I don't see that. Well, there's abundant evidence at that point that the investment policy statement, what the judge found, I think quite reasonably, is that this plan, given the poor asset allocation that participants on their own had achieved before the delegation, that this plan would benefit from a multi-asset growth strategy, not just stocks and bonds, also real estate, commodities, other assets, and that structurally this plan would benefit from having multiple unaffiliated asset managers running those assets, each of those managers being expert in their respective disciplines. And those findings are essentially unchallenged. And the IPS observation is in paragraph 171 of the order. So here, and this was before the delegation, this was in 2013, in preparing to assume delegations, Aon had surveyed the marketplace and concluded that there were no off-the-shelf commercially available options that combined the broad range of asset classes that Aon reasonably thought would be ideal for a plan like this, plans like the Lowe's plan, and certainly none that combined the services of multiple unaffiliated managers. That's an unchallenged finding from 2013. And so when they took the delegation in 2015 and they confronted an IPS that said an investment policy statement that instructed Aon to look for a growth fund with a broad range of asset classes, this strategy fit hand in glove. The manager diligence part of things, plaintiffs say, well, you've got to consider third-party managers. You have to consider off-the-shelf vehicles. That occurred inside the collective trust, essentially through a process that was unchallenged. Plaintiffs had no criticism at all for Aon's decision-making protocols, analytical methods for evaluating third-party managers who were hired to manage the growth fund's assets, different slices of the growth fund, nothing at all. No criticism at all of the protocols Aon followed for allocating assets among those managers. That was unchallenged, and that was where the diligence occurred. No criticism at all. I'm sorry? No criticism from whom? From the plaintiff or his experts. Nothing. And that was where the diligence was great. That's why context is so important. Here, everybody agreed we need to hire third-party managers, right? Aon wasn't going to pick securities. The contract with the plan called for using third-party managers. The collective trust was simply a vehicle for hiring them, and a low-cost vehicle at that. I think in paragraph 201 of the court's order, the court noted that this approach for hiring third-party managers saved the plan about a million bucks a year. But are you talking about the initial selection, or are you talking about the retention? Yes. Because those are two different aspects of the duty of prudence. Yes, I'm talking about both. The initial selection of the collective trust was rooted in the reasonable judgment that this plan would benefit from a growth fund with a broad range of asset classes with multiple managers. Right, I'm more interested in the evidence regarding retention. Right, and then after that, I think it's after that the diligence, the principal diligence, took place at the level of the individual managers and the asset allocations in the growth fund. So, you know, from 2015 forward, there were multiple changes made in managers when some were not performing as Aon hoped. There were multiple changes in asset allocations. New asset classes were represented in the growth fund in place of others. There were changes all the way throughout. That process, that manager due diligence process, which was based on protocols that Aon had developed over decades of doing manager due diligence for plans. Okay, but was there an assessment whether to retain the growth fund as the investment vehicle? They didn't need to fire the growth fund since it was simply a pass-through vehicle. What they could do if there was a manager who was underperforming is simply replace that manager and bring in another one or add in a different. You're saying there was no duty to reconsider reconfiguring this. In this context, in this context-sensitive inquiry, I believe that is right, Your Honor. But why is that? Because that's not totally fair, right? Because you say that the growth fund is a pass-through entity, but it's a pass-through entity that's run by a group of managers, right, managers who are picking third parties, right? They're not managers in the sense of picking stocks, but they're managers who are picking managers, right? And so the question, I get your point. You're doing diligence at the bottom level managers, right, making sure the people actually picking stocks are doing a good job. I think what Judge Keenan's question goes to is, are you doing something to look at what you want to call a pass-through entity, but it's not really a pass-through entity because it has people that work there, and your duty of prudence required that you evaluate whether those people were doing a good job. There's a management team for the growth fund, right? The collective trust has a management team. Yeah, absolutely. Right, and that management team are picking other stock pickers, right? They're picking managers. It's a fund of funds. That's right. It's a fund of funds. And when you run the people running a fund of funds, the question is, are you doing any diligence that they're doing a good job? So not that the people picking stocks are doing a good job. That's the internal prudence. The question is, is your fund of fund managers, are they doing a good job? And that's a separate duty of prudence, right? I think in principle, yes, and I think at any point along the way, if Anna concluded that it no longer makes sense to have multiple best-in-class managers managing a fund with a broad range of asset classes. No, no, not the category, right? I want to talk about the particular people you chose because, listen, in a fund of fund, right, there are people who pick better funds than others, right? They're better evaluators of talent, right? And so the question is, do you not have a duty of prudence to ensure that your pickers, right, your team that's running the fund of funds, that they're doing a good job as opposed to they're just mediocre and maybe they think they're picking, you know, best-in-class managers, but in fact they're, like, doing a terrible job of it. The AON looked at its track record in analyzing and picking good managers. That was a continuous process. Tell me what in the record I can look at that AON monitored, evaluated, considered, thought about whether the fund of fund managers were competent or incompetent. I mean, I'm not trying to be too blunt about it. I understand. But, I mean, the question is, the fund of fund people, they could be terrible or they could be great. So the Delegated Portfolio Oversight Committee continually compared the growth fund to its peer group. So tell me where that is. It's throughout the record. The Delegated Portfolio Oversight Committee minutes. Evidence of the trial? Oh, yes. And was so found by the judge? Yes. I mean, he says in paragraph 342, you know, AON kept continually abreast of the market, you know, how other offerings in the market were doing, and there are findings that the Delegated Portfolio Oversight Committee continually looked at the growth fund relative to its peers. And, you know, so that's my first answer. My second answer is that, you know, if AON concluded that, gosh, maybe it isn't a very good delegate and there are others out there that could perform the delegated role like Russell Investments or Northern Trust, you know, that puts AON in a very awkward position because Lowe's has hired AON to be the delegate. And if AON had turned around and said, well, we're going to hire Russell to represent the plan's interest here and after, that would have added another layer of fees and would also have invaded Lowe's province in determining that AON should be the delegate. Right, but that's all on the merits, right? What I'm trying to just ensure that on the duty to monitor, right, what I want to be able to say is, yes, they were monitoring the fund-to-fund in addition to monitoring the funds themselves. Yeah, the record is very clear. There was continuous monitoring of the fund-to-funds relative to the multi-asset growth peer group, and that's in the Delegated Portfolio Oversight Committee record, continuous. And, you know, this was not like the house was on fire because remember Judge Bell's other finding. He found the growth fund to be, in a separate finding, a reasonable product for the plan, in part because from a risk-adjusted standpoint, its performance was at the top of the pack. It had a Morningstar five-star rating almost throughout its entire rated history, and it was delivering superior returns for the risk that participants are undertaking by investing. And so those two things, I think, match up very nicely. I'm over time, Your Honor, but I'm happy to answer more questions. Thank you. Thank you very much, sir. Thank you. Mr. Weissler? Yes, Your Honor, just a few brief points in rebuttal. I think I want to pick up on both Judge Richardson and Judge Keenan's questions to opposing counsel about what obligations a plan fiduciary has to both select an initial investment and to monitor it. And what you heard, I think, is that at the fund level, the plan was not doing any sort of prudent analysis to compare not, you know, what are the managers doing down at the ground level, but whether the growth fund in particular was a prudent investment for purposes of this plan. And that's what didn't happen here at any point while Aon was acting as a fiduciary. The only place that the district court identified in the record in which Aon undertook this kind of comparative analysis, a qualitative analysis about the prudence or appropriateness of the growth fund, the particular fund that it put into this plan. The only point this entire case in which that happened was when Aon was not acting as a fiduciary. Your friend on the other side says the Delegated Portfolio Oversight Committee was the group that was really charged with looking at the fund-to-fund levels as opposed to the individual fund levels. Do you respond to that? Yeah. I don't think that's right, number one. But more importantly, here's what I think the problem is. There's a disconnect because what we're talking about from a prudent standpoint is not the substance, the merits of, you know, how well this particular fund is doing. It's a process-based question. Is Aon as fiduciary not just looking at other potential managers, but are they asking comparatively, is this fund the right fund for this particular plan? And that never happened in this case while Aon was acting as a fiduciary. And so that was a breach of the what? Duty of prudence, Your Honor. Duty of prudence. And the district court said that the entire — The district court? The district court's conclusion that there was no breach of the duty of prudence here turned on its belief that what happened before Aon became a fiduciary could cure any problem that happened later. That's the core holding. So I think what he says instead is that we consider this in context. We consider it in total. We don't close our eyes to everything that happened before the moment they become fiduciary, but instead we evaluate the totality of the information and what they're doing. That's a different question. I mean, you're saying that we ought to close our eyes to everything that came before whatever the December 13 date. As a matter of, I think, the way the duty of prudence works, it only kicks in once you become a fiduciary. So what happens before when you're creating a fund for business purposes does not have a bearing on whether that fund is appropriate or prudent to be used in a plan in which you are acting as a fiduciary. And there is no dispute that Aon didn't do any of that kind of comparative analysis in this case when it became a fiduciary. Can I ask one follow-up question? So they violated their duty as a fiduciary, you say, and that that poisons the well. Is that right? So, yes, they violated— We got this Bedrick. Are you familiar with Bedrick? Yep, I'm familiar with Bedrick. And you're familiar with Judge Hall? Yep. Do you know his connection to this court? I do not, Your Honor. He was my direct predecessor. Thank you. But he said there's no balancing of the interests of the duty of loyalty. Well, that I think is spot on. No? So before Judge King, I was focused on the duty of prudence. With the duty of loyalty, which Aon breached by virtue of its effort to leverage its fiduciary relationship to sell Lowe's, this product on delegated services, there is no balancing. And that's where the district court in this case went awry on the duty of loyalty because what it said was, look, you've got several people acting as fiduciaries. You've got one guy who is— I'm going to ask your colleague, but I want to give you the chance to ask her too. So you suggest in various times and ways that the change in investment structure somehow impacted the cross-selling of the delegated fiduciary. Can you briefly, given where we are on the time and the point in the afternoon, explain to me why the former impacts the latter? The former is the fiduciary—sorry. I'm sorry. So why the investment structure decision impacts the cross-selling of the delegated fiduciary. Well, in this case, one thing that Aon is saying is we're going to put our own fund into this new structure, and it just would make sense if we're going to be using one of our funds to also have us act as fiduciary. So we're picking new funds. One of them will include ours. So it just would make sense. And there's record evidence for this. I quoted this to you earlier. There's a communication from one of the fiduciaries that says if you're moving to this new plan structure, our delegated fiduciary services would dovetail nicely with that structure. And the reason is because they're using—Aon is using its own proprietary fund in that structure. And that, Judge King, just to get back to your question, that blurring of the lines between fiduciary hat and executive hat is exactly why there is no—there can be no balancing under Bedrick. One ounce of a conflict of interest between a fiduciary and the company violates the breach of the duty of loyalty. And on that duty, that's where the district court went wrong. On the duty of prudence, it went wrong because it accepted that a fiduciary can perform an analysis before it becomes a fiduciary and then check out after the fact once it becomes a fiduciary. And the duty of prudence does not permit that kind of pre-fiduciary analysis to play a role. Unless the Court has any further questions. Thank you very much. Thank you. We appreciate it. And if we could do so in this Court, we'd come down in Greek Council in the well of the Court. It's been a tradition for many, many years. But we're not doing so now because of the pandemic. So when you come back next time, we'll do that with you. That being said, we'll take your case under advisement. And, Madam Clerk, we will adjourn the Court until tomorrow morning. This Honorable Court stands adjourned until tomorrow morning. God save the United States and this Honorable Court.
judges: Robert B. King, Julius N. Richardson, Barbara Milano Keenan